Oscar A. Gandía, Plaintiff and Appellant, v. Heriberto Marín, etc., Defendant and Appellee.

No. 8866. Argued April 18, 1944.—Decided May 1, 1944.

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for apellant. *José M. Valentín Esteves* for appellee.

Mr. Chief Justice Travieso delivered the opinion of the court.

On September 6, 1942, Oscar A. Gandía, manager of the baseball team ''Pirates'', instituted an injunction proceeding in the District Court of San Juan wherein he alleged in brief as follows:

That the ''Pirates'' team is a member and founder of the ''Circuito de Baseball Aficionado de Puerto Rico, Inc.'', a nonprofitable corporation, of which defendant Heriberto Marín is president; that on August 31, 1943, defendant Marín sent a communication to plaintiff disqualifying him for a period of four weeks—from September 6 to 26, 1943—and forbidding him to stay at or visit the dugout of the players of the ''Pirates'' team during game days or in any manner coach said team.

Plaintiff alleged that the disqualification and penalty imposed by the defendant constituted a violation of the proceeding expressly provided for in the constitution of the Circuito de Baseball Aficionado de Puerto Rico, Inc., inasmuch as plaintiff was never notified of any complaint brought against him and neither was he given an opportunity to be heard and defend himself; and further that the President of the Association lacks jurisdiction, authority, or power to impose on his own account said penalties, unless he complies first with the requirements provided by the Constitution of

said Association which have not been complied with in the present case.

After alleging the damages which this order of suspension would cause him, plaintiff sought a permanent writ of injunction against the defendant, enjoining him from enforcing the order of suspension. On the same day that the complaint was filed, the lower court issued a restraining order and to show cause why an injunction *pendente lite* should not be issued. The plaintiff furnished bond for $300.00.

On September 7, 1943, plaintiff filed a motion praying that the court summon the defendant and punish him as for contempt. In said motion he alleged that the restraining order was notified to defendant Marín on September 6, at 1: 00 P.M., by the marshal of the court; that said order was expressly made to include defendant and his agents, servants, employees, and attorneys or officers; that on September 6, at 2: 00 P. M., a baseball game began in which the "Pirates" team was going to play, Mr. Adolfo Salazar acting as umpire, designated by the defendant, with written instructions from the defendant to prevent the plaintiff from acting as manager of his team and to compel him to leave the field, and in the event that plaintiff should refuse to obey said orders, to forfeit the game in favor of the team playing opposite plaintiff's; that notwithstanding said Salazar had been notified by Marín not to carry out the written instructions and a certified copy of the restraining order was shown to him, he refused to comply with said order and forfeited the two games which were to be played that afternoon, in favor of the opposing team. Plaintiff further alleged that Marín also violated the restraining order in not setting aside in an effective manner the written instructions given to Salazar, for he only telephoned a convict and asked him to see the sargeant on guard and request the latter to tell Salazar that the instructions which he had given to him had been set aside.

After Salazar and Marín had been summoned to show cause why they should not be punished for contempt, they appeared before the lower court on September 13, 1943. The evidence adduced by both parties was heard, and the court rendered judgment exonerating both defendants on the ground that "it was convinced that the defendants had not disregarded the order of the court in any manner whatsoever." Feeling aggrieved by that judgment, the plaintiff has taken the present appeal.

The appellant contends that the lower court erred in exonerating the defendant, because in his opinion the evidence introduced showed that they had committed contempt. Therefore, we feel bound to make a careful study of the evidence.

The fact that the restraining order was served on Marín was proved by the testimony of the marshal and by Marín's own admission that he had received copies of the petition and of the order.

Plaintiff Gandía testified that on September 6, 1942, the "Pirates" team, of which he is the manager, had to play two baseball games. On that day he could not act as manager of said team because Mr. Salazar, who was acting as umpire, forbade it. At the commencement of the game, when he was reaching the coaching plate in order to coach his team from there, Salazar told him that he had to withdraw because he had written instructions from President Marín not to allow him in the field. He then showed Salazar a certified copy of the restraining order rendered two hours previously by Judge Romany; and Salazar after reading the restraining order told him that he had a written order from the President of the Circuito "that that was the the one he was going to carry out." Gandía informed Salazar that if he did not comply with the order of the court he would be held responsible and Salazar answered "that he was willing to suffer the consequences and that he was

going to carry out the orders given to him by Mr. Heriberto Marín." When they were waiting for Salazar to begin the game in the field adjacent to the Insular Penitentiary, a convict arrived with a note saying that Marín had telephoned to inform Salazar that he could allow Gandía to coach his team on that day; that Salazar after reading the message said that he would not carry out those instructions because he had a written order which he was not going to substitute by a telephone message. Gandía was not allowed to act as manager and when he insisted to do so Salazar, complying with Marín's instructions, forfeited both games, thereby causing Gandía to lose $60 which he had spent. Marín did not show up at the penitentiary league. When Salazar had finished reading the restraining order he said to Gandía: "this is only against this gentleman", that is, against Marín. Gandía then stated that the order included the agents, employees, and servants, to which Salazar replied that he was not a "servant" of Marín. Gandía then said that he, Salazar, was an "employee" of the Circuito because he was being paid for acting as arbiter of the games.

Mr. Pedro Vázquez, radio commentator, testified that on said date he spoke to Mr. Salazar about the matter of disqualifying Gandía. Salazar informed him that he had received a telephone message but not directly from Marín, that it had been delivered to him by the telephone operator at the Penitentiary and that Marín had given him instructions to allow Gandía to coach his team. Salazar told him that he vould not give credit to that telephone message because he had not received it directly from Marín. After the game had begun, and Salazar told Gandía that he could not permit him to stay on the field, Gandía took out from his pocket a copy of the order from Judge Romany and showed it to Salazar and the latter said that he could not comply with that order because it was not against him but against the President of the Circuito, and that so far as he was con-

cerned, the only official document was the one written by the president.

The defendant Heriberto Marín testifying in his own defense said: That about 1:15 P. M. he received the restraining order, read it, and immediately went out to a telephone because he did not have one at his home. He went to the grocery store from which he usually made his calls but found it closed. Finally he used the telephone of a drug store at Stop 22. First he called a taxi concern but they did not have a taxi available to take him to the Penitentiary league. He then called the Penitentiary and spoke with the operator at the switchboard and gave him instructions to tell Salazar to permit Gandía to coach his team from the field. The game was scheduled for 1:30 P. M. At about ten minutes to two he again called the Penitentiary to see if they had carried out his order, and spoke to the same person, and this person told him that his order had been delivered. Having accomplished this, he went to the game at the Sixto Escobar Park which was scheduled for 3:00 in the afternoon. Later he learned that the order of the court had not been complied with.

Salazar, the other defendant, testified that he was going to act as the main arbiter in the games on that day. A day before the President of the Circuito had given him written instructions in connection with Mr. Gandía. When he reached the place of the game Gandía was already there but told him nothing. When the game was about to begin two convicts arrived and delivered a note signed by F. Castro and Jim Correa, two other convicts. In the note Marín told him to permit Gandía to coach his team. He received the note before talking with Gandía. When he gave the signal to begin the game he saw Gandía there and, as he had instructions from Marín, he ordered the game to be stopped and told Gandía that he could not stay there. Gandía then showed him some papers which he took out of his pocket.

He read the papers but did not see on them the seal of the court or anything which showed that the papers were from the court. He then informed Gandía that he could not take part in the game because he had been penalized for four weeks by the Circuito. That he paid no attention to the note of the convicts because he is familiar with those "tricks" (*bochinches*) of calling on the telephone and he said to himself "this is queer". He then went to the Penitentiary to talk over the telephone with Marín, but he could not get him after trying for half an hour. He does not know whether the paper which Gandía showed him was certified by the clerk of the court. It is not true that he told Gandía that he would stand the consequences. It is true that he told Gandía that the order was directed against Marín and not against him. That the truth is that he doubted whether the paper that Gandía showed him was lawful and for that reason he thought it better to follow the instructions of Marín. That if he had seen the seal of the court he would not have been capable of disregarding the order of the court. That he had doubts as to the signatures on the paper. That no one can give credit to a telephone message signed by two ruthless criminals whom he knows.

Assuming, without deciding, that the complainant in a case like the instant one, is entitled to appeal from a judgment acquitting the defendants, we have considered the case on its merits. Upon an examination of the evidence in general and of the special circumstances of the case, it seems probable that the trial court who saw and heard the witnesses of both parties, should have a reasonable doubt as to whether the defendants had the intention to disregard the order of the court. For this reason, and since the lower court accepted as sufficient the excuses offered by the defendants, we think that our intervention herein would not be justified. Nevertheless, we must state that we would not have inter-

vened, either, had the lower court found the defendants guilty of the contempt charged against them.

It seems advisable to state here that nothing leads so easily to destroy the confidence and respect due to judicial orders than the leniency with which many courts act towards those accused of violating or disregarding their orders. Judicial orders must be complied with, without dispute or excuses on the part of those against whom they are directed, and it is incumbent on them to do all that is humanly possible to carry out the mandate of the court. After issuing an order the court should insist that the same be obeyed and should not accept trivial excuses or reasons to forgive or condone a manifest contempt.

The judgment appealed from should be affirmed.